Case No. 15-7144, United States, Israel, Julie McBride and Julie McBride Appellant, Linda Warren, et al. v. Halliburton Company, et al. Mr. Kubeli for the Appellant, Julie McBride. Mr. Johnson for Appley's Halliburton Company, et al. Good morning, Your Honors. Good morning. May it please the Court, Victor Kubeli for the Appellant, Julie McBride. Ms. McBride is also a relator under the Civil False Claims Act. This case was brought under the Civil False Claims Act. And the gist of what was ruled on below concerned Ms. McBride's allegation that the defendants created, maintained, and reported false morale, welfare, and recreation and welfare usage data in performing their Log Cat 3 contract in Iraq and relatedly failed to maintain or destroy records reporting the usage of data. The appeal here is from a summary judgment decision from the Court below, and the gist of the legal framework or issue before the district judge was the implied falsity theory of falsity under the False Claims Act, which has been known and articulated from this Court's decision in the SIAC case for a number of years and recently sort of further clarified in the Supreme Court's universal health care case. But the point is that under implied falsity, and this is a basic and important point, it's not what the government was told but what the government was not told. The district court assumed falsity, right? Yes, Your Honor. Sorry. The question is materiality. That's absolutely right, Your Honor. So that is the point that's been addressed at length in both briefs is materiality. In other words, would this have mattered to the government? So I think the appeal exercise really is reduced to essentially an assessment of the evidence and a fairly mundane exercise of is there evidence of materiality. And what's your best shot with the evidence? Yes. Three categories, Your Honor. First, both the defendant and the client government said that this information, meaning MWR usage information, matters. We have the defendant's internal manual warning that reporting any other number not matching You're saying that because a firm reacts to accusations with a staunch effort to make sure that assuming there's any truth in the No, Your Honor. These are contemporaneous records that relate to the municipal I understand they're contemporaneous, but surely the purpose of that promulgation by the defendant is clear. I don't follow, Your Honor. Wasn't it after these allegations had been made, this evidence that you're pointing to now? Well, if you're talking about the internal manual, and there are three extremely specific and compelling quotes in that manual that evidence materiality, it is my understanding that that manual was created after my client left Iraq. And so the question then becomes, is this evidence relevant, or is it not relevant? And if it's relevant, is that argument that you would expect from the defendants something that goes to the admissibility of the evidence, relevance, or the weight of the evidence? Keep in mind, this is all under the same contract with the same reimbursement rules. So our position would be that the defendant's arguments concerning when that manual was created go to the weight of the evidence, but the fact that it was instructing the defendant's employees how to apply the terms of the umbrella contract, which continued before and after, clearly makes it irrelevant. Getting back to my best shot, Your Honor, and this is, again, under the category of what the parties to the contract said. You have the defendant's MWR regional manager saying that she can't express how important, that's in quotes. Then I'm inserting here appellants, I'm paraphrasing here, appellee MWR headcount figures were in order to, quote, get the credit we deserve. So, again, you've got the defendant itself, regional manager, telling her people that, essentially, I can't tell you how important this information is to our getting the credit we deserve. Then we have, of course, Mr. Connery's declaration. This is the administrative contracting officer to whom the function of assessing the liability was delegated under the contract. And how much weight does he get? How much weight does he get? Yeah. What's he say about it? Well, he says that had he known that the appellees were maintaining their supply and inflated MWR usage records, this might have affected his decision as to whether claimed MWR costs were reasonable and thus allowable. So there's an additional might. He also says that he might have investigated further to find that there was something actually problematic. So the two mights. Absolutely. Yes, he might have investigated further, and he might have taken some further action. Yes, he didn't know about the false data. Everybody's responding to hypothetical questions about knowing about it. Absolutely, Your Honor. That's a very important point is that I think the district judge got off track in not recognizing that, by definition, the materiality assessment under an implied falsity theory is a hypothetical question. The government didn't know what it didn't know. I think the witness introduces two additional hypotheticals. Well, yes, Your Honor. I know that's an argument that the appellees make. And, I mean, the way I read that is Mr. Connery is saying that if I knew this, then it would prompt me to find out what I think about this. Yes, it might prompt me. Sure. In other words, I mean, we drafted the declaration with a standard of materiality in mind, and I think it matches exactly the standard. I mean, he's not going to be able to act until he follows up on this new knowledge of information that he previously lacked. How do you get around universal health and language in there, including that if the government pays a particular claim in full despite actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material? And given that statement by the Supreme Court with respect to your theory and the fact that the government kept paying these claims after investigating, how is that not dispositive against you? Well, first of all, it's evidence, and even strong evidence doesn't mean there can't be contrary evidence. So, again, in the summary judgment context, applying Rule 56, you have to look at whether the proponent of the claim has presented more than a scintilla of evidence to support that claim, even if there's contrary evidence. Second, I don't think it's so clear in the record that the government did an investigation. There's references to a DCAA proceeding for review, but I noted on page 785 of the appendix, this government employee said that there was no audit, and the government said, quote, we did not issue an opinion. So maybe counsel can point to something else in the record that I'm not aware of that gives more, fleshes out this notion that the government did a big investigation and kept paying them even after the investigation. The other point I might make, Your Honor, is that there was a fairly widespread failure to maintain headcount information. So the government, even if it had investigated, couldn't have ever figured out what my client reported. If I may, Judge Williams, getting back to your – that was my best answer, Your Honor. And if I may, Judge Williams, getting back to the second category that comprises my best shot here, materiality evidence, I'll just refer the Court to the cost reimbursement rules, which require the maintenance of records and condition payment on the maintenance of records. Well, let me be more specific. Universal tells us that a requirement to make a particular piece of information a condition payment is neither necessary nor sufficient to materiality. Yes, Your Honor, and I think that Universal took this Court's opinion in sight a little further because before Universal came out, we were relying on that first prong vis-à-vis the language and the cost reimbursement regulations that gave the government the option, if the records were lacking, to deny payment. But Universal says that that's not enough. It specifically – it's almost like they read my brief in the district court and said, no, that's not going to be enough. So our position now is that the regulations which are in the contract are simply additional evidence of materiality but themselves would not be dispositive. Then other corroborating evidence. One thing in the appendix, which is not pointed out in our brief, on page A-1000, there's something called a KBR task execution plan that says, quote, and the right to examine all facilities, records, and data to include any of KBR's books, documents, papers, or other records related to the contract, end quote. So I think this is the defendant sort of, and not surprisingly, mirroring in its internal plan these cost reimbursement requirements. Last category I just called other corroborating evidence. You have the contract requiring SITREPS at various times, not at other times. But the point is SITREPS contain headcounts, and that data from the SITREPS was rolled into these monthly and yearly logistics reports that went to the government. Next, and this can't be overlooked, is the appellees used MWR usage data, actual numbers in their presentations to the award fee board, basically touting, you know, given the amount of costs you're reimbursing us, look how much work we're doing. Look how many people we're serving. And I'll note that on page A-437 of the appendix, the contract says that the government will rely on KBR's written presentations to the award fee board. So there's sort of a contract provision that recognizes what actually happened, that, you know, the appellees would make a written presentation, and the government would rely on the content of that presentation, and usage data was in those presentations. Finally, now this basis of estimate concerns a different task order, not the one in issue here. But, again, it's under the same contract and the same reimbursement rules, and this is under task order 89, a basis of estimate report was submitted that used, as I read it, this is A-927-28 of the appendix, used the number of MWR users as the basis for estimating the labor need for the upcoming task order. You want to save some time for rebuttal? Yes, sir. Okay. Thank you. Your Honor, and may it please the Court, my name is Joshua Johnson, and I represent the defendants in this matter. This case calls for a straightforward application of the False Claims Act's rigorous and demanding materiality standard. Under circuit precedent, an alleged misrepresentation is material under the FCA, only if it was critical to the government's decision to pay. And I think the last 10 minutes or so have shown us that McBride has not satisfied that standard here. Your Honor, just a background question. The government is paying a lot of money for these facilities, which are basically to improve troop morale, and I assume that it has ways of verifying that it's actually, well, perhaps not improving troop morale, but at least doing whatever can be done can reasonably be done in that direction. And I was wondering, do you know what those things are? When I was in the Army, it never occurred to me that any protest I might make would have any effect at all. I was at the bottom of the bottom. But these are directed, these facilities are for all ranks, right? Yes, Your Honor. I mean, at least there would be, I suppose, informal information about how flammable they were, or maybe there's also a formal assessment? I'm not aware of a formal assessment. The record does not speak to that. But these are recreation centers on military camps being used by military officials. It doesn't go all the way up the line. Anyone could use the camps, that's my understanding. Yes, Your Honor. So military officials would go to these facilities and would see what was going on there. These are not facilities off in a hinterland where the Army didn't have a chance to observe KBR's performance. To just step through the various pieces of evidence that Mr. Kugle discussed during his presentation, the first was this fraud training document. That document was distributed in September 2006. So that's over a year after McBride had stopped working for KBR and after she alleges that the headcount inflation at Camp Fallujah had stopped. And it's also just inconsistent with what we know from the government, that the government investigated McBride's allegations and declined to seek any repayments from KBR, as it easily could have done. And as Judge Wilkins pointed out, under universal health, that is very strong evidence of a lack of materiality. Now, Mr. Kugle tried to play down the DCAA investigation, saying that DCAA did not describe it as an audit and it never issued any formal opinion. While we do know that DCAA went to the facilities at Camp Fallujah, took a look, spoke with KBR employees, and we also know that afterward DCAA issued some form of internal memorandum. That's in the record. DCAA said that in an email. It never issued a formal opinion, but it certainly looked into McBride's allegations and declined to exercise its right to seek repayments. The second piece of evidence that Mr. Kugle relied on is this can't express email, I can't express how important something is. That was talking about in the context of award fee presentations. And so this also dovetails with Mr. Kugle's reliance on usage figures in KBR's award fee presentations. The most salient point about the award fee presentations is that KBR got award fee letters from the government. Kristen Mendoza, an Army witness, testified that if recreation center facilities were important to award fees, that would have been mentioned in the letter. The letters do not mention recreation facilities at all. Moving to Jerry Connery's declaration, we submit to the court that that is simply too speculative. Universal Health says you look at the likely or actual behavior of the recipient of the alleged misrepresentation. We know the government's conduct here. It investigated. It didn't seek repayments. And we also have government witnesses who have testified that these headcounts just weren't significant to us. We did not have any interest in them. Mr. Kugle briefly mentioned the daily sit-reps. As we've talked about in our briefs, it's actually undisputed here. Mr. Kugle conceded below that Task Order 59 did not require the daily situation reports to include headcount information, and there is no evidence that the daily sit-reps KBR provided to the military under Task Order 59 included headcounts for Camp Fallujah or Camp Aramadi. The final piece of evidence Mr. Kugle discussed was the basis of estimate report. That was created about a half year after McBride left KBR's employment and was under a different task order, Task Order 89. It really doesn't say anything about KBR's performance under Task Order 59, which was at the very beginning of the Iraqi campaign. When Task Order 59 started, KBR had to make decisions based on camp population, not actual usage, because it just didn't have actual usage data it could rely on. If the court has no further questions or no questions about Issue 2, we ask that it affirm the district court's judgment. Thank you. Yes. I'll be quick. I think that the four points, I think the fact that counsel spent his entire argument debating the evidence with me shows that a summary judgment. Well, but the government, isn't the key point at a macro level but also a micro level, is the government investigated and declined to seek reimbursement? No. I think as the Supreme Court says, what they did is unclear, but if they did something, it's evidence. It doesn't mean that you can ignore Rule 56 and ignore our evidence. But that piece of the case is fact, right? Right. And I know there's a certain, I'm not blind to the fact there's a certain kind of common sense appeal to the notion that, hey, the government looked at it, those are his words, took a look, whatever that means, but didn't care about it, and here I am arguing that the government's interest should be protected. I do understand that, but that doesn't change my earlier arguments on this point. Okay. Second, materiality, I think with respect to counsel, he may have overstated at least my understanding of the test for materiality. Universal didn't change it. Universal relied on the materiality provision in the current False Claims Act, which doesn't apply to this case, but it said that that provision comes from the common law antecedents. And so the authorities on what materiality the standard for materiality is in our briefs still apply under universal, and the key words are capable of, not critical, capable of influencing agency action. If the government had known of the falsity, it, quote, may not have paid. And the final two points, Your Honors, the discussion of the CO testimony, actually the CO, Mr. Duhart, said that overreporting the number of personnel who used an NWR facility would have been unacceptable, and that's on Appendix 588. And lastly, I don't buy necessarily this notion there's a conflict between the ACO's testimony that it might have mattered or might, might have mattered, as Judge Williams pointed out, and the PCO, or we call them CO testimony, that it didn't matter. And the reason I say that is because you have testimony from the, you have an affidavit in the record from the guy in charge of the whole contract. The contract administration was delegated to the ACO, Mr. Connery. Mr. Duhart said, CO Duhart, excuse me, the summary judgment opinion below that says, according to defendants, Mr. Connery's role was to, within the structure of administering this contract, was to determine whether costs to the contractors, including them, submitted were allowable, allocable, and reasonable, which I agree with. CO Mendoza said the ACOs operate under a delegation of authority from the COs. And Mr. Smith, who was the person in charge of the whole project for a period, said that under Log Cab 3, day-to-day administration of task orders, such as 59, were delegated to the ACOs, meaning Mr. Connery and the other ACOs. And those are my four points, Your Honor. Okay. Thank you very much. The case is submitted. Thank you, Your Honor.
judges: Kavanaugh, Wilkins, Williams